In the Matter of the Application of THE NEW YORK JUVENILE
ASYLUM, Appellant, for a Writ of Mandamus.

JOHN W. KELLER, as Commissioner of Public Charities in the
City of New York, Respondent.

1. CHARITABLE INSTITUTIONS — PAYMENTS OF PUBLIC MONEYS TO INSTI-
TUTIONS WHOLLY OR PARTLY UNDER PRIVATE CONTROL — RULES OF
THE STATE BOARD OF CHARITIES. A municipal corporation is prohibited
by the Constitution (Art. 8, § 14) and the statutes (L. 1895, ch. 754; L.
1896, ch. 546, § 9, subd. 8), from paying public moneys to a charitable
institution wholly or partly under private control, for the care, support
and maintenance of inmates who are not received and retained therein
pursuant to the rules established by the state board of charities for the pur-
pose of determining whether such inmates are properly a public charge.

2. NEW YORK JUVENILE ASYLUM — CHARTER PROVISION REQUIRING
PAYMENT BY THE CITY AND COUNTY OF NEW YORK FOR THE SUPPORT OF
INMATES NOT COMMITTED TO IT IN ACCORDANCE WITH RULES OF STATE
BOARD OF CHARITIES, SUPERSEDED BY THE CONSTITUTION. The fact
that the New York Juvenile Asylum, a private charitable institution, was
authorized by its charter (L. 1851, ch. 332) to take under its care the
management of such children as should by the consent, in writing, of
their parents or guardians, be voluntarily surrendered and intrusted to it,
and by section 28 of chapter 245 of the Laws of 1866 might require the
county of New York to pay annually a specified sum for the support of
children so committed to it, which section was incorporated into the char-
ter of Greater New York (L. 1897, ch. 378, § 230) and has not in terms
been repealed, amended or modified, does not authorize the city and
county of New York to pay for the support and maintenance of any
inmate not received and retained therein pursuant to the rules of the
state board of charities, since such payment is prohibited, not by the
rules effecting the repeal or amendment of the statute conferring the
right thereto, but by the Constitution itself, which superseded the statute
and operated presently from the time the rules were established.

*Matter of New York Juvenile Asylum*, 69 App. Div. 615, affirmed.

(Argued June 11, 1902; decided October 7, 1902.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered Feb-
ruary 27, 1902, which affirmed an order of Special Term
denying an application for a writ of mandamus to compel
the commissioner of public charities to certify that a cer-

tain inmate of the petitioning asylum was a proper public charge.

The facts, so far as material, are stated in the opinion.

*Robert Goeller* for appellant. The new rule of the state board of charities deprives the juvenile asylum of the right to receive children by surrender as a public charge, a power granted to the juvenile asylum by the legislature, and to that extent repeals the asylum's charter. To have the power directly to repeal an act of the legislature, the state board of charities must derive its authority either from the legislature itself or from the Constitution. (*Van Denburgh* v. *Village of Greenbush*, 66 N. Y. 1; *Matter of D. & H. C. Co.*, 69 N. Y. 209; *Matter of Evergreens*, 47 N. Y. 216; *McKenna* v. *Edmunstone*, 91 N. Y. 231; *B. C. Assn.* v. *Buffalo*, 118 N. Y. 61; *People ex rel.* v. *Knox*, 166 N. Y. 444; *People* v. *Henry*, 47 App. Div. 133; *People* v. *Dalton*, 31 Misc. Rep. 296; 31 App. Div. 630; *People* v. *Grant*, 37 N. Y. 630; *Gormerly* v. *McGlynn*, 84 N. Y. 284.) While the Constitution granted power to the state board of charities to make rules for the reception and retention of inmates by charitable institutions subject to the control of the legislature by general laws, and the legislature in pursuance thereof, by the act of 1895, in terms granted the same power to it, yet it cannot be contended that such power included authority to enact rules which would abrogate existing laws. (*People ex rel.* v. *Keller*, 99 N. Y. 479; *Bertholf* v. *O'Reilly*, 74 N. Y. 509; *Bank of Chenango* v. *Brown*, 26 N. Y. 467; Const. of N. Y., art. 1, § 16, art. 3, § 1; *Barto* v. *Himrod*, 8 N. Y. 483; *P. R. R. Co.* v. *Memphis R. R. Co.*, 10 Wall. 38; *Parker* v. *Comm.* 6 Penn. St. 507; Sedgwick on Const. 165; *Wayman* v. *Southard*, 10 Wheat. 46; 18 N. Y. 41; 23 N. Y. 448; 26 N. Y. 473; 28 N. Y. 635; 92 N. Y. 315; *State* v. *Circuit Judge*, 50 N. J. L. 585.)

*George L. Rives, Corporation Counsel, Theodore Connoly* and *Charles A. O'Neil* for respondent. The rule of the state board of charities attacked is a valid exercise of the power

conferred upon said board by the Constitution and laws of the state of New York. (*People ex rel.* v. *Comptroller*, 152 N. Y. 399; *People ex rel.* v. *Fitch*, 154 N. Y. 14; *Matter of O. L. & Co.'s Bank*, 21 N. Y. 1; *People* v. *O'Brien*, 111 N. Y. 1; *L. & N. R. R. Co.* v. *Kentucky*, 183 U. S. 503.) There is no limitation upon the power of the state board of charities to make rules except that such rules shall be subject to the control of the legislature by general laws. (*Mayor, etc.,* v. *T. T. S. R. R. Co.*, 113 N. Y. 311; *B. Co.* v. *Massachusetts*, 97 U. S. 25; *Budd* v. *New York*, 143 U. S. 517, affg. 117 N. Y. 1; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *Stone* v. *Mississippi*, 101 U. S. 814; *Butchers' Union* v. *Crescent City Co.*, 111 U. S. 746; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *Powell* v. *Pennsylvania*, 127 U. S. 683; *Douglas* v. *Kentucky*, 168 U. S. 488.) The constitutional provision applies to petitioner. (*People ex rel.* v. *Dalton*, 158 N. Y. 175.)

HAIGHT, J. On or about the 5th day of August, 1901, Mamie Schellberger, a minor of the age of thirteen years, was surrendered to the New York Juvenile Asylum by her mother as an ungovernable child. She was received by the board of directors of the asylum and for the remainder of the month was retained therein, after which time the asylum, in accordance with its custom, rendered a bill to the commissioner of public charities for the support of the child in order to obtain a certificate that the child was a proper public charge, and that the asylum was entitled to its pay therefor by the comptroller of the city of New York. The commissioner of public charities refused to give the certificate called for, upon the ground that the child had not been committed to the asylum in accordance with the rules established by the state board of charities; thereupon this proceeding was instituted to compel the commissioner to give the certificate called for.

The New York Juvenile Asylum was incorporated by special act of the legislature in the year 1851, by chapter 332

of the laws of that year. Its object was the reception of children between the ages of five and fourteen years, to provide for their support and to afford them the means of a moral, intellectual and industrial education. The corporation was authorized to take under its care the management of such children as should by the consent, in writing, of their parents or guardians be voluntarily surrendered and intrusted to it; also such children as should be committed to its charge by order of any magistrate of the city and county of New York; and also such children as should be found in the streets, highways and public places in the city in circumstances of want, suffering, abandonment, exposure, neglect or vagrancy.

By an amendment of the act of incorporation in 1866, chapter 245, section 28, the board of supervisors of the county were required in each year to levy and collect by tax and to pay over to the asylum one hundred and ten dollars per annum, or proportionately for any fraction of the year, for each child which, by virtue and in pursuance of the provisions of the act, "shall be intrusted or committed to the said asylum and shall be supported and instructed therein." This section of the statute was subsequently incorporated into the Greater New York charter, section 230, which is the statute upon which the petitioner bases its claim for support of the child, Mamie Schellberger. Under this statute claims of this character have been paid for many years, and unless it has been repealed, amended or modified by the imposition of conditions, it furnishes authority for the payment of the petitioner's claim.

The Constitution of 1895, article 8, section 11, provides that "The legislature shall provide for a state board of charities, which shall visit and inspect all institutions, whether state, county, municipal, incorporated or not incorporated, which are of a charitable, eleemosynary, correctional or reformatory character * * *."

Section 13. "Existing laws relating to institutions referred to in the foregoing sections, and to their supervision and inspection, in so far as such laws are not inconsistent with the

provisions of the Constitution, shall remain in force until amended or repealed by the legislature   *   *   *."

Section 14.   " Nothing in this Constitution contained shall prevent the Legislature from making such provision for the education and support of the blind, the deaf and dumb, and juvenile delinquents, as to it may seem proper ; or prevent any county, city, town or village from providing for the care, support, maintenance and secular education of inmates of orphan asylums, homes for dependent children or correctional institutions, whether under public or private control.   Payments by counties, cities, towns and villages to charitable, eleemosynary, correctional and reformatory institutions, wholly or partly under private control, for care, support and maintenance, may be authorized, but shall not be required by the Legislature. *No such payments shall be made for any inmate of such institutions who is not received and retained therein pursuant to rules established by the state board of charities.* Such rules shall be subject to the control of the Legislature by general laws."

Pursuant to these provisions of the Constitution the legislature in 1895, chapter 754, authorized cities, towns and villages in their discretion to appropriate and raise money by taxation and to pay the same over " to charitable, eleemosynary, correctional and reformatory institutions wholly or partly under private control, for the care, support and maintenance of their inmates, of the moneys which are or may be appropriated therefor ; *such payments to be made only for such inmates as are received and retained therein pursuant to rules established by the state board of charities,*" and again by the Laws of 1896, chapter 546, section 9, subdivision 8, provided that the said board of charities shall " establish rules for the reception and retention of inmates of all institutions which, by section 14 of article 8 of the Constitution, are subject to its supervision."

Section 230 of the Greater New York charter, as amended by chapter 466 of the Laws of 1901, authorized the board of estimate and apportionment in its discretion to annually

include in its estimate, to be raised and appropriated, various sums of money for institutions therein specifically named, among which, by subdivision 14, is the New York Juvenile Asylum; but by the concluding subdivision 24 of the section it is provided that payments were to be made "*only for such inmates as are received and retained therein pursuant to rules established by the state board of charities.*"    Again by the same charter, section 658, a department of public charities was created and the head of the department was called the "commissioner of public charities." Such commissioner was given jurisdiction over all the hospitals, almshouses and other institutions belonging to the city, with power to commit children who may become a public charge to *any institution incorporated for charitable purposes*, and to reimburse such societies and corporations for the expense incurred in the support of such children( sections 660 and 664); but by section 661 it is provided that "No payment shall be made by the city of New York to any charitable, eleemosynary or reformatory institution wholly or partly under private control, for the care, support, secular education, or maintenance of *any child surrendered to such institution*, or committed to, received or retained therein in accordance with section 664, * * * except upon the certificate of the commissioner of public charities that such child has been received and is retained by such institution pursuant to the rules and regulations established by the state board of charities."

The state board of charities, pursuant to the provisions of the Constitution and of the statutes to which we have called attention, established rules which, so far as is material upon the question under consideration, are as follows:

### "I. THE RECEPTION OF INMATES.

"The following classes of persons and no others may be received as public charges into charitable, eleemosynary, correctional and reformatory institutions wholly or partly under private control, authorized by law to receive payments from

any county, city, town or village for the support, care and maintenance of inmates. * * * 4. * * * No child between the ages of two and sixteen years, unless convicted of crime, shall be received into any such institution as a public charge unless committed thereto or placed therein by a court or magistrate having jurisdiction, or by the superintendent of the poor of a county, or overseer of the poor of a town, or commissioner or commissioners of charities, or other local officer or board legally exercising the powers of an overseer in the county, city, town or village sought to be charged with the support of such child and authorized by law to commit children to such institution or to place them therein."

As we have seen, Mamie Schellberger was placed in the New York Juvenile Asylum by her mother. She had not been convicted of any crime and was not committed by any court or magistrate, or by the commissioner of charities of the city of New York who legally exercised the powers of an overseer of the poor in counties. It is not alleged that this child was a poor person or that her mother was unable to support her, and thus far there has been no adjudication that she was a proper public charge. It will thus be seen that the claim of the asylum rests upon the provision of its charter giving parents the right of surrendering their children to it, and the provisions of the statute authorizing the city of New York to pay it one hundred and ten dollars a year for each child so given to its charge and custody.

In answer to this the city invokes the rule established by the state board of charities to which we have referred. The asylum contends that this rule is illegal, unauthorized and void. If this rule is to be construed as effecting the repeal of the statute we should hesitate about sustaining its validity. The Constitution and the legislature, by the acts to which we have referred, have authorized the state board of charities to make rules, but such rules are subject to the control of the legislature by general laws. By authorizing the board to make rules the legislature has not delegated to it any of its powers to enact or to repeal laws, and, doubtless, no such power was

contemplated by the constitutional provision to which we have referred. This is evident from the concluding clause, which subjects the rules of the board to the control of the legislature.

The Constitution is the supreme law of the state, and before it all statutes must fall that are in conflict with its provisions. The first provision to which we have called attention preserves statutes until amended or repealed by the legislature, which are not inconsistent with its provisions. The next section to which we have referred gives to the legislature the power to authorize counties, cities, towns and villages to make appropriations for charitable institutions wholly or partly under private control, but prohibits the legislature from requiring such appropriations. In other words, cities may be authorized to make donations to charitable institutions, but they must be left free to exercise their own judgment as to the amount and character of the charities they shall bestow; but no payments shall be made for any inmate of a charitable institution under private control who is not received and retained therein pursuant to the rules established by the state board of charities. Here we have an express prohibition with reference to payments made for inmates of such institutions. Under the charter of the asylum the city of New York was required to pay one hundred and ten dollars per annum for each child surrendered to its care by its parents, or committed to it by an officer authorized to commit children to such institutions. Under this statute there was no discretionary power vested in the common council or board of supervisors. The payment was required to be made by the act of the legislature, and it was subject to no rules or regulations of any board; but the provisions of the Constitution effected a change of the statutes in these particulars. The payment of one hundred and ten dollars per annum can no longer be required by the legislature; it can only authorize the city to make it, leaving it free to act through its constituted authority and to make the payment or not in its discretion. Not only this but it changes the provision of the statutes

by prohibiting payments, unless the conditions specified in the Constitution are complied with.   What are these conditions? They have been repeated time and again in the statutes, as well as in the Constitution.   There was a purpose sought to be accomplished ; this purpose appears from the discussions that were engaged in by the members of the constitutional convention in which this provision was framed.   Mr. Choate, the president of the convention, spoke at some length when this provision was under consideration, and, among other things, stated that in the city of New York, as it then existed before its enlargement, there were eighteen thousand children in these asylums supported by charity, many of whom were placed there without commitment by parents who were perfectly able to support them; and that these provisions had been framed for the purpose of preventing this abuse and the wrongful appropriation of the public moneys.   It is thus apparent that the object and purpose of the provision was that there should be some means provided for determining whether the inmates of these asylums were properly a public charge.   This duty the Constitution delegated to the state board of charities, but subject to legislative control.   It impaired no legislative function; it merely involved an inquiry as to the condition of the inmates in regard to their financial responsibility or that of their parents or guardians.   It doubtless was not deemed practicable for the board itself to investigate and determine the financial condition of each inmate of these asylums throughout the state, consequently it was given power to adopt rules and to specify officers by whom these questions could readily be determined.

It is not the rule that repeals or amends the statute ; it is the Constitution itself that effects the change.   If the Constitution had provided that no payments should be made for the support of infants in these asylums, except upon an order of the court adjudging that the person for whom payment is sought was properly a public charge, it would hardly be contended that the court in determining the question was in effect repealing the statute.   To our minds no greater force can be

given to the action of the state board of charities. It has adopted rules as it was required to do by the provisions of the Constitution and of the statutes, to which we have referred. It is the Constitution that gives life and force to these rules and it is the Constitution that places limitations upon the payments that the statutes had previously authorized and required. The Constitution itself does not provide the means for the determination of the question as to whether the children in these institutions are properly a public charge ; that function, as we have seen, devolves upon the state board of charities. Until, therefore, the state board of charities takes action in the matter and provides the means by adopting rules, the constitutional provision may not be self-executing; but as soon as the board takes action and adopts the rules, then the Constitution acts presently upon the existing statutes and all payments thereafter made must be in accordance with its provisions. This was asserted by Chief Judge ANDREWS in the case of *People ex rel. Inebriates' Home for Kings County* v. *Comptroller of the City of Brooklyn* (152 N. Y. 399–410), who, after referring to this provision of the Constitution, says : " We entertain no doubt that this prohibition operated presently, that is to say, that from the time rules should be established by the State Board regulating the reception and retention by charitable institutions, no payments would be justified for the care, support and maintenance of inmates received or retained in contravention of the rules of the board."

So in the case of *People ex rel. New York Institution for the Blind* v. *Fitch* (154 N. Y. 14–38) in which it was again asserted that this provision of the Constitution operated presently from the time rules were established by the state board of charities ; and in addition thereto, MARTIN, J., in delivering the opinion of the court, says : " This declaration of the organic law is plain and unambiguous, and expressly forbids the appropriation of money by the counties and cities of the state to any such purpose, unless the inmates are received and retained in the manner stated. Its manifest purpose is to make all appropriations of public moneys by the

local political divisions or municipalities of the state to institutions under private control, subject to the supervision and rules of the state board of charities."

There is nothing in these provisions which affects the rights of parents or guardians in surrendering their children or wards to the custody of the asylum for support and education, if they so desire. The asylum may still receive such children and support them at the expense of their parents or guardians, or of such charitable fund as may be in its possession for that purpose. They are only prohibited from collecting pay from the city for the support of these children until the commissioner of charities of the city, or of some court having jurisdiction, has committed them to the asylum as proper subjects of a public charge. This imposes no great hardship on the asylum, and it protects the city from the frauds which may be practiced upon it by those who are able to support and educate their own children.

These views render it unnecessary at this time to consider the effect of the various statutes to which attention has been called.

The order appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, VANN, CULLEN and WERNER, JJ., concur.

Order affirmed.